UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUTTON,<br><br>    Appellant,<br><br>v.<br><br>EAGLE VISTA EQUITIES LLC,<br><br>    Appellee. | Case No. 19-cv-03880-EMC<br><br>**ORDER AFFIRMING U.S. BANKRUPTCY COURT'S ORDER GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AGAINST APPELLANT**<br><br>Docket No. 1 |

## I.     INTRODUCTION

Appellant Eve Sutton filed suit against Appellees Eagle Vista Equities LLC ("Eagle Vista") and Wedgewood, Inc. ("Wedgewood") (collectively, the "Appellees") alleging, *inter alia*, wrongful foreclosure and seeking a judgment quieting title to the property in her name. The United States Bankruptcy Court, Judge Blumenstiel, granted summary judgment in favor of Appellees against Ms. Sutton's two claims for relief seeking: (1) determination of wrongful trustee sale; and (2) cancellation of instruments and quiet title. Ms. Sutton appeals. *See* Docket No. 1. For the reasons discussed below, the Court **AFFIRMS** the Bankruptcy Court's order.

## II.     BACKGROUND

A.     <u>Factual Background</u>

The Bankruptcy Court found the following facts undisputed. *See* Docket No. 20-2 (Appellant's Excerpts of the Record ["ER"]) at 492; Docket No. 16 (Appendix re Appellees' Brief ["App."]) at 416.

Ms. Sutton acquired the at-issue property in 2002. ER at 457. In August 2006, she refinanced her loan (hereinafter the "Loan") with the following details in the Deed of Trust ("DOT"): (1) the new debt amount was $450,000 with an interest rate of 6.75%; (2) the

beneficiary was Wells Fargo, N.A., a National Association ("Wells Fargo"); and (3) the trustee was Fidelity National Title Insurance Company ("Fidelity"). *Id*. at 457–58. Pursuant to this new DOT, Ms. Sutton was responsible for monthly payments of $2,531.25. *Id*. at 458.

In 2009, Ms. Sutton sought a modification of the Loan. Modification was denied. Later that year, she defaulted when she failed to make payments. *Id*. Ms. Sutton contends that she never received an explanation as to why her modification request was denied; she further contends that Wells Fargo advised that she needed to cease payments in order to be considered for the modification and that she complied. *Id*. Ultimately, her failure to make the monthly payments led to the recording of the Notice of Default on December 4, 2009 ("2009 NOD"). *Id*. First American Title Insurance Company ("First America") recorded the 2009 NOD as an agent for Wells Fargo. *Id*.

On January 6, 2010, First America substituted as the trustee under the DOT. *Id*. First America noticed a foreclosure sale on behalf of Wells Fargo for April 1, 2010. *Id*. In response, Ms. Sutton filed a petition for Chapter 13 bankruptcy on March 31, 2010. *Id*. at 459. In that petition, she listed the property's fair-market value as $214,335, and her current debt to Wells Fargo was $473,812.21. *Id*. As part of her petition, she filed a plan for reorganizing her finances, which proposed that she would make monthly payments of $1,031 to Wells Fargo upon modification of her Loan. *Id*. At this time, Ms. Sutton represented that a loan-modification application was pending. *Id*.

On April 26, 2010, Wells Fargo assigned its interest under the DOT to HSBC Bank USA, N.A. ("HSBC"). *Id*. at 460. HSBC thereafter filed a proof of claim to confirm that the amount owed on the Loan as of the date of petition (March 31, 2010) was $475,987.21, and the amount of pre-petition arrears of 23,774.28 ("pre-petition arrears"). *Id*. at 461. Wells Fargo Home Mortgage ("WFHM") acted as HSBC's servicing agent. *Id*.

On June 21, 2010, WFHM moved to lift the First Bankruptcy's automatic stay because Ms. Sutton failed to make payments on the Loan after filing her bankruptcy petition, which had accrued in the amount of $6,613.15 ("post-petition arrears"). Ms. Sutton opposed the motion on the grounds that—notwithstanding her admission that she made zero payments on the Loan after

2

the petition date—the partial payments proposed in her plan ($1,031 monthly, which she did not pay) was sufficient to protect HSBC's interest in the property as she continued to seek modification of her Loan. *Id*. at 461. Ms. Sutton admitted that her previously-filed April 2010 request for modification was denied, but in a declaration she attested that she filed another modification application on June 24, 2010. *Id*. The Bankruptcy Court granted WFHM's motion and permitted HSBC to issue a notice of acceleration of the Loan and to record a second notice of default. *Id*. But it also stated that HSBC could not file for foreclosure, and the stay would not be lifted, until HSBC filed a written notification of the denial of Ms. Sutton's June 24, 2010 loan-modification application. *Id*.

On August 13, 2010, Ms. Sutton represented to the Bankruptcy Court that HSBC offered to modify the Loan as follows: (1) payments on the Loan would be temporarily reduced to $1,031.25 for a period of ten months (*i.e.*, from September 2010 to June 2011), after which it would revert back to the original contractual amount of $2,531.25; (2) the pre-petition arrears would be merged to the principal balance of the Loan; and (3) the interest on the Loan would temporarily reduce to 2.75% from 6.25% for this ten-month period. *Id*. On December 31, 2010, HSBC amended its proof of claim to indicate that the outstanding balance of the Loan was $475,987.12 and the pre-petition arrears were "0.00," because it merged into the principal balance. *Id*.

Nearly a year later, on November 1, 2011, HSBC filed its second motion to lift the automatic-bankruptcy stay because once the ten-month period lapsed and the payment obligation reverted to the original contractual amount, Ms. Sutton failed to make the full monthly payments, which resulted in new arrears of $4,581.25 ("post-modification arrears"). *Id*. at 463. In opposition, Ms. Sutton conceded that the payment amount reverted to the original amount ($2,531.25), but she argued that she began pursuing another loan modification in October 2011, and WFHM agreed that she could continue making the lowered payment ($1,031.25). *Id*. at 463–64.

Ms. Sutton and HSBC resolved this second motion with a stipulation, filed on March 23, 2012, which required Ms. Sutton to make payments of $1,031.25 beginning January 1, 2012,

while HSBC considered her October 2011 modification application. *Id*. Pursuant to this stipulation, if HSBC denied Ms. Sutton's application, the parties could (1) further stipulate or (2) HSBC could renew its motion to lift the stay with fifteen days' notice. *Id*. The Bankruptcy Court approved the stipulation. *Id*.

There is no evidence of any modifications to the Loan, nor is there evidence that the post-modification arrears ($4,581.25) were relieved, excused, or otherwise merged into the principal balance of the Loan. Moreover, there is no evidence of HSBC affirmatively denying Ms. Sutton's October 2011 modification application.

On January 2, 2014, First America recorded a Notice of Trustee's sale, which scheduled a foreclosure sale on January 22, 2014. *Id*. First America subsequently recorded a second Notice of Trustee's Sale on March 20, 2015, which scheduled a foreclosure sale on April 14, 2015. *Id*. On July 2, 2015, HSBC, First American, and Wells Fargo proceeded with foreclosure and sold the property to Eagle Vista for $381,791.01. *See id*.; *see also* Docket No. 15 ("Appellees' Brief") at 11. According to a Trustee's Deed of Sale, Eagle Vista obtained title to the property on July 16, 2015. ER at 465.

B. Procedural Background

Ms. Sutton filed an adversary complaint on September 27, 2018 in Bankruptcy Court, alleging (1) wrongful trustee sale; (2) cancellation and quiet title; (3) fraudulent transfer violation under 11 U.S.C. section 548(a)(1)(A); (4) fraudulent transfer violation under 11 U.S.C. Section 544; and (5) violation of Uniform Voidable Transaction Act under California Civil Code section 3439 *et seq*. ER at 1–15. Appellees moved to dismiss under Rule 12(b)(6). *Id*. at 28. The Bankruptcy Court converted the motion to dismiss into a summary judgment motion and dismissed Ms. Sutton's third through fifth claims for relief, but it requested additional briefing regarding claims one and two. *Id*. at 454. The Bankruptcy Court ultimately ruled for Eagle Vista and Wedgewood on the remaining two claims. *Id*. at 505. Ms. Sutton appeals the summary judgment order. Docket No. 1 ("Notice of Appeal").

### III. LEGAL STANDARD

Appeal of the Bankruptcy Court's grant of summary judgment is reviewed *de novo*. *See In*

*re Lewis*, 97 F.3d 1182, 1185 (9th Cir. 1996). "The reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *In re Yarbrow*, 150 B.R. 233, 236 (9th Cir. BAP 1993).

## IV. DISCUSSION

Ms. Sutton's opening brief presents numerous issues on appeal—some previously raised, and some new[1]—but the dispositive issue here is whether Appellees were bona fide purchasers ("BFP") as a matter of law. The Bankruptcy Court concluded Appellees were. This Court agrees.

The Bankruptcy Court recognized that a buyer receives BFP status if it (1) purchases the property in good faith for value, and (2) has no knowledge or notice of the asserted rights of another. ER at 476. Bankruptcy Court Judge Blumenstiel only addressed the second prong because Ms. Sutton did not oppose the first. *Id*. at 477. During the Bankruptcy Court's hearing on Appellees' motion to dismiss, Ms. Sutton "conceded that, if Eagle Vista is a bona fide purchaser for value [], all the defects from which Ms. Sutton alleges the foreclosure process suffered are irrelevant, for a BFP takes good title notwithstanding such defects." *Id*. at 493. Bankruptcy Court then rejected each of Ms. Sutton's BFP challenges, finding the following:

- Appellees did not have to fully review the public record pertaining to the Loan and foreclosure process because "California law imposes upon purchasers a duty of reasonable inquiry, not a duty of exhaustive inquiry." ER at 478 (citing *First Fid. Thrift & Loan Ass'n v. Alliance Bank*, 60 Cal. App. 4th 1433, 1445 (1998)).

- Even if Appellees conducted an exhaustive review, discovering the six-year gap between the 2009 NOD and the 2015 foreclosure sale did not divest them of BFP

---

[1] Ms. Sutton presents the following issues on appeal: (1) Is the 2015 trustee sale void since it was based on a 2009 Notice of Default which substantially overstated the sum required by the borrower to reinstate her loan? (2) Was the Trustee equitably estopped or barred by laches from proceeding to a trustee sale in 2015 based on the 2009 Notice of Default? (3) Is the 2015 Trustee Sale void since Sutton was not provided any reason why her HAMP loan modification was denied? (4) Did Eagle Vista acquire title to the subject property despite the fact that the First American lacked the power to sell at the non-judicial trustee sale? (5) What is the proper remedy in this case? Docket No. 13 ("Opening Br.") at 16.

5

status because notices of default do not expire. *Id*.

- Appellees would have never discovered the agreement for the temporary modification of the Loan because it was a private agreement between Ms. Sutton and Appellees, and the agreement never recorded in the property's chain of title. The temporary-modification agreement appeared publicly for the first (and only) time as an exhibit to one of Ms. Sutton's three bankruptcy proceedings. *Id*. at 481.
- Appellees did not have notice of the defects of which Ms. Sutton complains, because none existed. *Id*. at 483–84. Ms. Sutton argued that the NOD was defective because First America had no authority to record it, since First America had not yet substituted as the official Trustee of Record. But California Civil Code section 2924(a)(1) specifically addresses who has authority to record notices of default: "[t]he trustee, mortgagee, or beneficiary, ***or any of their authorized agents*** . . . ." (emphasis added). First America had such authorization. Moreover, Ms. Sutton contended that the foreclosure sale had to occur within 365 days from the NOD—but the only statute that imposes any 365-day deadline is California Civil Code section 2924g(c)(1), which requires the sale within 365 days of the notice of *sale*—not notice of ***default***. Here, the notice of sale recorded on April 14, 2015, and the foreclosure sale occurred on July 2, 2015, which was well within the timeframe prescribed by Section 2924(g)(c)(1). *Id*. at 485.
- Appellees had no duty to review records (*e.g.*, Securities and Exchange Commission filings or other unrecorded documents) outside of the property's chain of title. *Id*.

This Court agrees with each of the Bankruptcy Court's conclusions regarding BFP status. On appeal, Ms. Sutton still does not dispute that Appellees paid something of value for the property, nor does she allege that Appellees acted in bad faith. Moreover, she also does not allege that Appellees played a role in the foreclosure process that would disqualify them as bona fide purchasers. Instead, Ms. Sutton challenges Eagle Vista's status as a BFP because she alleges it had "a mandatory duty to review the Trustee Sale Guaranty in order to become a BFP." Opening

6

Br. at 22. According to Ms. Sutton, "there is no evidence that Eagle Vista reviewed the Trustee Sale Guaranty[,]" which would have revealed that the 2009 DOT was defective because (1) it overstated the amount of default; (2) no second notice of default was recorded; and (3) the permanent modification plan failed. *Id*. at 23. Because of this, Ms. Sutton maintains that triable issues of material fact exist as to whether Appellees conducted sufficient due diligence to be considered bona fide purchasers. In other words, she alleges that a "sophisticated buyer such as Eagle Vista" had a duty to review the Trustee Sale Guaranty. *Id*. at 22.

In response, Appellees argue it is undisputed that Ms. Sutton did not file a *lis pendens* to put potential buyers on constructive notice that there may be an irregularity that could affect the title of the property. Answering Br. at 25 (citing App. at 336). Without any notice of defects, Appellees contend they are entitled to a conclusive presumption that they are BFPs because of California Civil Code section 2924(c). *Id*. Under Section 2924(c), there is a presumption in favor of a BFP who received a trustee's deed that contains a recital indicating the trustee fulfilled its statutory notice requirements. *Melendrez v. D & I Inv., Inc.*, 127 Cal. App. 4th 1238, 1250 (2005). Section 2924(c) reads,

> A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice."

Here, Appellees point to the Trustee's Deed Upon Sale, which contains the following provision: "All requirements of law and the applicable Deed of Trust including, but not limited to those enumerated by Civil Code 2924, *et seq*., requiring the mailing, publication, personal delivery and posting of the Notice of Default and Notice of Sale, as respectively appropriate, have been met." App. at 114. Ms. Sutton cannot overcome the Section 2924(c) presumption on this record because she was in post-modification default once her monthly obligations reverted to the original contractual amount of $2,531.25—which led to missed payments of $4,581.25. Ms. Sutton does not dispute this post-modification default. Nor does she dispute that the temporary modification

7

expressly reserved "all rights of recourse to which [HSBC] is presently entitled against any property." ER at 497. So even if Appellees conducted an exhaustive search of the property's title history, including a review of the 2009 NOD, they would not have had knowledge (actual or constructive) of any defects that would disqualify their status as bona fide purchasers. Instead, they would have discovered the post-modification default and HSBC's reserved right to act under the 2009 NOD.

Accordingly, Ms. Sutton has not rebutted the conclusive presumption afforded by Section 2924(c), nor has she raised any disputed facts material to Appellees' BFP status. After the parties fully briefed this appeal, Ms. Sutton filed two supplemental notices of new authority, identifying recent California court of appeal opinions. Neither decision strips Appellees of BFP status, nor could they do so retroactively.

First, Ms. Sutton cites *Taniguchi v. Restoration Homes LLC*, No. A152827, 2019 WL 6837966 (Cal. Ct. App. Dec. 16, 2019) for her argument that Appellees deprived her of her reinstatement right. This decision has nothing to do with BFP status. In *Taniguchi*, the borrowers sued their lender for depriving them of their right to reinstatement. *Id*. at *1. The Taniguchis obtained a loan in 2006 and, after having difficulty making payments, entered into a loan modification with their lender in 2008. *Id*. The modification stated that, "failure to make modified payments as scheduled would be an event of default, and that in the event of a default the Modification would be null and void at the lender's option, and the lender would have the right to enforce the loan and associated agreements according to the original terms." *Id*. The Taniguchis defaulted on the modified loan by missing four payments. *Id*. at *2. The lender subsequently recorded a second notice of default and informed the Taniguchis that in order to reinstate their loan, they had to pay the four missed payments ***and*** the sums that had been previously deferred by the modification. *Id*.

The Court of Appeal analyzed California Civil Code section 2924c, which provides that when a mortgage loan is accelerated due to default, the borrower can reinstate the loan by paying all amounts due, "other than the portion of principal as would not then be due had no default occurred." Cal. Civ. Code, § 2924c(a)(1). Section 2953 limits the ability of a borrower to waive

8

his or her right of reinstatement, "Any express agreement made or entered into by a borrower at the time of or in connection with the ***making of or renewing of any loan*** secured by a deed of trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privileges . . . shall be void and of no effect." *Id*. § 2953 (emphasis added). The Court of Appeal reversed summary judgment in favor of the lender and remanded for further proceedings. It held that

> for purposes of section 2953, the Taniguchis' Modification is appropriately viewed as the making or renewal of a loan secured by a deed of trust. It is thus subject to the anti-waiver provisions of section 2953. Section 2924c gives the Taniguchis the opportunity to cure their precipitating default (that is, the missed modified monthly payments) by making up those missed payments and paying the associated late charges and fees, and in that way to avoid the consequences of default on the modified loan.

*Taniguchi*, 2019 WL 6837966 at *7. In so concluding, the *Taniguchi* court reasoned that after the renewal (*i.e.*, the modification), "the debtor is not in breach or default so long as the amended or renewed terms of the indebtedness are performed . . . . And upon signing the Modifications, the Taniguchis were no longer in default." *Id*. at 5. The *Taniguchi* court held that defaults arising from modifications are also covered by Section 2953—*i.e.*, a borrower is entitled to reinstatement of the loan after payment of the post-modification default. But requiring the borrower to also pay the arrears that gave rise to the modification in the first place may deprive the borrower of reinstatement rights.[2]

Here, the similarities are that Ms. Sutton defaulted, entered into a modification that deferred her arrears, and defaulted again post-modification. But the similarities end there. Ms. Sutton does not allege that she attempted to reinstate her Loan before or after the temporary modification. As such, *Taniguchi* is factually distinguishable and, most importantly, does not concern BFP status, which is dispositive here. The decision only concerns reinstatement rights—a right which Ms. Sutton indisputably never sought.

---

[2] At the outset of the *Taniguchi* opinion, the court acknowledges that "[t]his appears to be a case of first impression. The Legislature did not define the phrase 'at the time of or in connection with the making of or renewing of any loan secured by a deed of trust' for purposes of section 2953, and there is no clear definition in the case law." *Id*. at *4.

9

The second new authority on which Ms. Sutton relies is *Williams v. 21st Mortgage. Corporation.*, No. A153307, 2020 WL 359027, at *1 (Cal. Ct. App. Jan. 22, 2020). The *Williams* court followed the holding in *Taniguchis*, which declared that a lender cannot require a borrower to cure default by paying pre- and post-modification arrears, if the modification plan was confirmed by the bankruptcy court. *Williams,* 2020 WL 359027, at *4. In other words, *Williams* held that the default that gave rise to the modification were "not currently in default." Like *Taniguchis*, the decision in *Williams* does not divest Appellees of BFP status—the opinion has nothing to do with a purchaser being a BFP. Further, as stated above, *Taniguchis* and *Williams* are inapplicable here because Ms. Sutton never attempted to reinstate her loan by paying the default balance (pre- or post-modification).

Given Appellees' status as BFPs—and Ms. Sutton's concession that BFP status would obviate the alleged defects with the 2009 NOD—this Court need not definitively decide Ms. Sutton's remaining arguments on appeal, some of which were newly raised and not addressed by the Bankruptcy Court. The Court notes, however, that none appear to have merit.[3]

///
///
///
///
///
///

---

[3] (1) Whether Ms. Sutton was entitled to a permanent loan modification. No, because the express terms of the temporary modification indicated that the reduced monthly payments were only for a ten-month period.

(2) Whether First America had authority to conduct the 2015 trustee sale. Yes, because there were no defects related to the 2009 NOD.

(3) Whether dual tracking existed. Need not address because it is a newly raised argument.

(4) Whether laches and estoppel apply to bar the foreclosure. Laches and estoppel do not apply to Appellees because Ms. Sutton concedes that they were not participants of the foreclosure process, except for being the buyers.

### V. <u>CONCLUSION</u>

Because of the foregoing, the Court **AFFIRMS** the summary judgment order against Ms. Sutton's first and second claims for relief because she has not raised a genuine dispute of material fact regarding Appellees' status as bona fide purchasers for value.

This order disposes of Docket No. 1.

**IT IS SO ORDERED**.

Dated: February 5, 2020

									_____
									EDWARD M. CHEN
									United States District Judge